UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DATAVOCITY GLOBAL HOLDINGS, INC. | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-603-SDJ |
| | § | |
| THE STANDARD FIRE INSURANCE COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Renewed Motion to Enforce Settlement Agreement. (Dkt. #19). After full consideration, the Court will deny the motion.

### I. BACKGROUND

This is an insurance coverage dispute. Plaintiff Datavocity Global Holdings, Inc. held a property insurance policy issued by Defendant The Standard Fire Insurance Company. (Dkt. #3 ¶ 1). Datavocity alleges that its property "sustained a covered theft loss" in June 2024, and that Standard wrongfully denied or underpaid its claim for that loss. (Dkt. #3 ¶¶ 14, 24–28).

Datavocity sued Standard in state court, bringing claims for breach of contract, violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act ("DTPA"), and breach of the common law duty of good faith and fair dealing. (Dkt. #3 ¶¶ 32–58). Standard removed the case to this Court, invoking diversity jurisdiction. (Dkt. #5 ¶ 6).

Many months into the litigation, Datavocity filed a "motion to enforce settlement," alleging—without any supporting evidence—that the parties had "reached a settlement agreement" but Datavocity had "yet to receive the settlement

draft" from Standard. (Dkt. #14 at 1). Datavocity asked that the Court enter an order "enforcing the settlement agreement" and "compelling [Standard] to have the settlement check delivered to [Datavocity] within ten (10) days." (Dkt. #14 at 1–2). The Court denied the motion, noting that the alleged settlement appeared to be merely "a *potential* settlement" and Datavocity had "presented no evidence of a final settlement agreement." (Dkt. #15 at 1). The Court instructed the parties to notify the Court immediately if and when they did reach a final settlement agreement, per the Court's Scheduling Order. (Dkt. #15 at 2).

The next week, Datavocity filed a notice of settlement, attaching the parties' purported settlement agreement. (Dkt. #16). The Court then issued an order giving the parties one month to file closing documents or, if necessary, a joint status report on settlement. (Dkt. #17). A month later, the parties filed a joint report on settlement, expressing disagreement over Standard's obligations under the agreement and whether Standard was in breach of the agreement. (Dkt. #18).

Datavocity now moves again to enforce the parties' alleged settlement agreement. (Dkt. #19). According to Datavocity, the parties reached a settlement agreement on January 29, 2026, and confirmed that agreement by email. (Dkt. #19 at 2). Datavocity then received a proposed release from Standard, which it promptly executed and returned to Standard. (Dkt. #19 at 2). Under that release, Standard was required to remit a settlement payment of $50,000 to Datavocity "within fourteen (14) days after receipt of a W-9 from counsel and an executed copy of [the release]." (Dkt. #19-2 at 2). More than fourteen days have passed, and Standard still has not

remitted payment per the release. Datavocity therefore "requests that the Court enforce the parties' settlement agreement and order [Standard] to tender the settlement [payment]." (Dkt. #19 at 4).

Standard concedes the existence of the settlement agreement but argues that its nonperformance should be excused "while issues related to who may be entitled to the settlement funds, if anyone, are resolved." (Dkt. #20 ¶ 1). According to Standard, after it entered into the settlement agreement with Datavocity, it "learned of numerous questionable [insurance] claims made by [Datavocity] and paid by [Standard]." (Dkt. #20 ¶ 4). Those claims—which, as far as the Court can tell, have nothing to do with the insurance claim underlying this lawsuit—"involved [Datavocity's] submission of invoices that were 'not genuine' and did 'not represent any actual transactions' by [Datavocity]." (Dkt. #20 ¶ 4) (quoting (Dkt. #20-2 at 2)). Standard thus paid $150,000 to Datavocity for fraudulent claims. (Dkt. #20 ¶ 4).

Standard also learned of an unpaid $5.6 million default judgment against Datavocity in South Carolina state court. (Dkt. #20 ¶ 11). That judgment was premised on fraudulent conduct by Datavocity—what the court described as a "pattern of behavior" by Datavocity "designed to deceive Plaintiff to continue to sell goods to [Datavocity] . . . without paying for those goods." (Dkt. #20-3 at 6). Standard "understand[s] that the judgment has not been satisfied and the judgment creditor may seek to claim proceeds from this matter in an effort to collect its judgment." (Dkt. #20 ¶ 12).

Because Datavocity may not be entitled to the settlement funds at issue here, Standard seeks leave to deposit those funds in the Court's registry while it further investigates Datavocity's alleged fraudulent conduct and evaluates its obligations under the settlement agreement. (Dkt. #20 ¶¶ 13–14). In reply, Datavocity argues that Standard's fraud allegations against it are merely "collateral issues concerning unrelated claims," which "do not negate the settlement agreement" in this case or excuse Standard's obligations thereunder. (Dkt. #21 at 1).

## II. Discussion

Although the parties have not raised the issue of jurisdiction, the Court must "assure itself of its own jurisdiction." *Haverkamp v. Linthicum*, 152 F.4th 618, 624 (5th Cir. 2025) (cleaned up). For the reasons below, the Court finds that it likely lacks jurisdiction to enforce the parties' alleged settlement agreement in this matter. And even if it did have jurisdiction to do so, the Court would decline to exercise that jurisdiction here.

### A. Jurisdiction to Enforce Settlement Agreements Under *Kokkonen*

In *Kokkonen v. Guardian Life Ins. Co. of America*, the Supreme Court squarely addressed a federal court's jurisdiction to enforce settlement agreements. *See* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). After reaching an oral settlement agreement, the parties in *Kokkonen* executed a stipulation of dismissal, which the district judge signed. *Id.* at 376–77. The stipulation "did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed, it did not so much as refer to the settlement agreement." *Id.* at 377. Sometime after the

case was dismissed, the parties disagreed on petitioner's obligation to return certain files to respondent under the settlement agreement. *Id.* Respondent then moved the district court to enforce the agreement against petitioner. *Id.* The district court granted respondent's motion and entered an enforcement order, asserting an "inherent power" to do so. *Id.* (cleaned up). The Ninth Circuit affirmed, again citing the district court's "inherent supervisory power." *Id.* (cleaned up). The Supreme Court granted certiorari. *Id.*

The Court began its discussion with first principles on jurisdiction: "Federal courts are courts of limited jurisdiction." *Id.* "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). From these principles, the Court concluded that "[e]nforcement of the settlement agreement . . . , whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378.

The Court then addressed whether enforcement of the settlement agreement fell within the district court's ancillary jurisdiction, as respondent argued. *Id.* at 378–82. Ancillary jurisdiction, the Court explained, may only be asserted for two limited purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to

function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted). The Court concluded that neither of these purposes supported the district court's assertion of jurisdiction. *Id.* at 380.

As to the first, the Court explained that "the facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other." *Id.* Because the claims are not factually interdependent, "it would neither be necessary nor even particularly efficient that they be adjudicated together." *Id.* The Court thus rejected the suggestion that federal courts have inherent or ancillary jurisdiction over every agreement "that has as part of its consideration the dismissal of a case before a federal court." *Id.* To hold otherwise would erode the "concept of limited federal jurisdiction." *Id.*

As to the second purpose of ancillary jurisdiction, the Court found that enforcement of the parties' settlement agreement was not necessary for the district court to "vindicate its authority" or "effectuate its decrees" because the district court never ordered compliance with the settlement agreement. *Id.* at 380–82. Rather, the district court's "only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* at 380. The Court recognized, however, that the situation would be different had the district court ordered the parties to comply with the settlement agreement, via its dismissal order or otherwise. *Id.* at 381. "In that event, a breach of the agreement

would be a violation of [a court] order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* But absent such an order, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

**B. Datavocity's Motion**

Here, the Court has neither adopted nor approved, much less ordered compliance with, the parties' alleged settlement agreement. So, under *Kokkonen*, there must be "some independent basis for federal jurisdiction." *Id.* Neither party has proposed an independent basis for jurisdiction, and it appears to the Court that such a basis is lacking.

First, the Court likely lacks original jurisdiction over Datavocity's claim for breach of the parties' settlement agreement. That breach-of-contract claim appears to be worth $50,000—the amount of the settlement payment allegedly owed by Standard. *See* (Dkt. #19-2 at 2). Because Datavocity's claim neither arises under federal law, 28 U.S.C. § 1331, nor involves an amount in controversy exceeding $75,000, 28 U.S.C. § 1332(a), the Court lacks original jurisdiction over it.

Second, the Court lacks supplemental jurisdiction over Datavocity's claim. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." For a group of claims to form part of the same case

or controversy, they must "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, Datavocity's underlying insurance-related claims and its claim for breach of the settlement agreement do not derive from a common nucleus of operative fact. The former concern an insurance claim for property theft that occurred in June 2024; the latter concerns a settlement agreement reached years later. To be sure, Standard's defense for failing to perform under the settlement agreement relies in part on allegedly fraudulent insurance claims submitted by Datavocity. But those allegedly fraudulent claims have nothing to do with the insurance claim underlying this lawsuit. *See supra* Part I.

Third, the Court lacks ancillary jurisdiction for the same reason it lacks supplemental jurisdiction—Datavocity's underlying insurance-related claims and its claim for breach of the settlement agreement are not "factually interdependent." *Kokkonen*, 511 U.S. at 379. And, as noted earlier, the Court never ordered compliance with the settlement agreement, so enforcement of that agreement is not necessary to "vindicate [the Court's] authority" or "effectuate its decrees." *Id.* at 380.

The Court's conclusion that it likely lacks jurisdiction here is potentially complicated by several Fifth Circuit cases asserting an inherent power to enforce settlements. As recently as a few years ago, the Fifth Circuit reaffirmed its pre-*Kokkonen* holding that "[a] district court has inherent power to enforce settlements in cases before it[.]" *Cavalier v. Jill L. Craft Att'y at L., L.L.C.*, No. 23-30778, 2024 WL 2846059, at *3 (5th Cir. June 5, 2024) (citing *Mid-S. Towing Co. v. Har-Win, Inc.*,

733 F.2d 386, 389 (5th Cir. 1984)); *see also United States v. Ma*, 178 F.4th 884, 890 (5th Cir. 2026) ("A district court has the inherent power to recognize, encourage, and enforce settlement agreements."). Respectfully, the Court reads *Kokkonen* as rejecting an "inherent power to enforce settlements"—whether the underlying case is still pending or not. *See Kokkonen*, 511 U.S. at 380–81 (suggesting that, absent an existing court order requiring compliance with a settlement agreement, courts lack an "inherent power" to enforce settlement agreements). To be sure, *Kokkonen* involved a post-dismissal assertion of jurisdiction, but the Supreme Court's ruling "was not predicated upon the fact of the dismissal." *Dailey v. Park*, 468 F.Supp.2d 209, 214 (D.D.C. 2007). As one district court aptly explained,

> the *Kokkonen* Court's primary concern with the exercise of federal court jurisdiction over the settlement agreement was that enforcement of the agreement constituted more than just a continuation of the suit and that without formal judicial sanction, enforcement of a settlement agreement does not satisfy either prong necessary for ancillary jurisdiction. Accordingly, whether the underlying dispute is a live controversy is of no moment. Simply put, the court would no less violate the outer limits of ancillary jurisdiction in resolving the parties' privately created settlement agreement because of their still live controversy, as it would if the court had already dismissed the underlying suit.

*Id.* (citation omitted).

This Court is, of course, bound by Fifth Circuit precedent, even if it thinks that precedent is in tension with Supreme Court precedent. *See Ford v. Mckesson*, 171 F.4th 332, 343 (5th Cir. 2026). So, to the extent the Fifth Circuit's assertions of "inherent power" apply here, the Court cannot deny the existence of such power. The Court may, however, decline to exercise its inherent powers. *See In re McBryde*, 117 F.3d 208, 219 n.4 (5th Cir. 1997) (declining to exercise "any inherent power we may

have in this case"). To the extent the Court has the inherent power to enforce the parties' settlement agreement in this case, it declines to exercise that power.

## III. CONCLUSION

For these reasons, Plaintiff's Renewed Motion to Enforce Settlement Agreement, (Dkt. #19), is **DENIED**.

**So ORDERED and SIGNED this 3rd day of September, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE